# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:18-CV-00193-KDB-DCK

| | |
|---|---|
| JEREMY SEAN SHOOK AND JEFFREY DEAN SHOOK, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LINCOLNTON, NC, et al. <br><br> Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiffs Jeremy Shook and Jeffrey Shook's (collectively, "Plaintiffs") Motion for Preliminary Injunction (Doc. No. 11.) For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion.

## I.   RELEVANT BACKGROUND

This civil rights action is based on Plaintiffs' allegations that the City of Lincolnton, North Carolina ("the City") and certain City officials ("Individual Defendants") (collectively, "Defendants"), through the adoption and enforcement of two city ordinances, are interfering with Plaintiffs' First Amendment rights of free speech and free exercise of religion. Plaintiff also asserts the Defendants violated the Fourth and 14th Amendments and three provisions of the North Carolina constitution. Plaintiffs assert a total of ten claims against the City:

a) Count I – Violation of 42 U.S.C. § 1983 based on the contention that Section 103.05(B)(3) is facially unconstitutional
b) Count II – Violation of 42 U.S.C. § 1983 based on the contention that Section 103.05(B)(3) is unconstitutional as applied to Plaintiffs
c) Count III – Violation of 42 U.S.C. § 1983 based on the contention that Section 93.016(I) is facially unconstitutional
d) Count IV – Violation of 42 U.S.C. § 1983 based on the contention that Section 93.016(I) is unconstitutional as applied to Plaintiffs

e) Count V – Violation of Article I, § 13 of the North Carolina Constitution based on the contention that the City interfered with Plaintiffs right to freely exercise religion
f) Count VI – Violation of Article I, § 14 of the North Carolina Constitution based on the contention that the City interfered with Plaintiffs right to freedom of speech
g) Count VII – Violation of 42 U.S.C. § 1983 based the contention that Section 93.016(I) and Section 103.05(B)(3) are vague and overbroad in violation of the 14th Amendment of the U.S. Constitution, and also applied in an unconstitutional manner
h) Count VIII – Violation of Article I, § 19 of the North Carolina Constitution based the contention that Section 93.016(I) and Section 103.05(B)(3) are vague and overbroad, and also applied in an unconstitutional manner
i) Count IX - Violation of 42 U.S.C. § 1983 based on contention that the City unreasonably seized and prosecuted Plaintiff Jeffrey Shook in violation of the Fourth Amendment of the U.S. Constitution
j) Count X – Malicious prosecution

Plaintiffs also assert a claim for violation of 42 U.S.C. § 1983 based on alleged violations of the First, Fourth, and Fourteenth Amendments of the U.S. Constitution against the Individual Defendants.

The Complaint alleges that Plaintiffs are professing Christians whose religious beliefs compel them to "publicly share what they believe." (Doc. No. 1, ¶¶ 13, 14.) Plaintiffs allege that to accomplish this, they "have been preaching on the City's public streets or sidewalks for approximately 19 years, particularly at public festivals or gatherings." (*Id.*, ¶ 15.) They allege they "use no amplification when they preach" and "do not block ingress or egress to streets, sidewalks, or buildings, and do not otherwise follow, confront, harass, or otherwise interfere with other individuals." (*Id.*, ¶¶ 17, 19.) The City submitted declarations to the Court in support of its opposition to Plaintiffs' motion that establish there is a dispute regarding Plaintiffs' description of their conduct while preaching.

Plaintiffs allege that they received citations for violating two city ordinances on May 31, 2018, while they were preaching at a weekly public event (the "Alive After Five Festival") in downtown Lincolnton. (*Id.* ¶ 21–25.) The citations stated that Plaintiffs violated § 130.05, titled

"Special Events and Festivals," ("Special Event Ordinance") and § 93.016, titled "Unnecessary Noise Prohibited Specifically" ("Unnecessary Noise Ordinance"). (*Id.*, ¶¶ 26–29.) The Special Event Ordinance provides:

> (B) During the time and area so designated, the following activities shall be forbidden:
>
> . . .
>
> (3) Any conduct deemed to be disruptive or dangerous to participants or attendees of the special event. Abusive or threatening language that disrupts a special event or festival or that abuses or threatens another person in a manner likely to cause a fight or brawl at a special event or festival is prohibited. Noise Ord. 93.016(I) also applies.

At the time Plaintiffs received these citations, the Unnecessary Noise Ordinance provided:

> The following acts, among others, are hereby declared to create loud, disturbing and unnecessary noises in violation of this code, but the enumeration shall not be deemed to be exclusive:
>
> . . .
>
> (I) Any person or group of persons willfully making any loud, raucous, or disturbing sound that – because of its volume, duration, and character – annoy, disturb, frighten, injure, or endanger the comfort, health, peace, or safety of reasonable persons of ordinary sensibilities in the neighborhood or Central Business District is prohibited.

Violation of the Special Event Ordinance is either a Class 1 or Class 2 misdemeanor, and violation of the Unnecessary Noise Ordinance is a Class 3 misdemeanor. (*Id.*) Each ticket provided that Plaintiffs must pay a $20.00 fine within fifteen days. (*Id.*, ¶ 30.) When Plaintiffs inquired as to how they could contest the citations, they were told they could not. (*Id.,* ¶¶ 31–33.) Plaintiffs never paid the fine, and the City asserts in its response to Plaintiffs' motion that it made no attempt to enforce the citation beyond sending a reminder notice.

The Complaint further alleges that roughly one month later, on June 28, 2018, Plaintiff Jeffrey Shook was arrested while preaching at the Alive After Five Festival. (*Id.*, ¶ 37.) The

police report from the incident states that he violated the Special Event Ordinance and the Unnecessary Noise Ordinance. (*Id.*, ¶ 39.) The criminal case was dismissed by order of the Lincoln County District Court on September 17, 2018. (*Id.*, ¶ 44.) The Complaint alleges that the judge determined that the Unnecessary Noise Ordinance under which Plaintiff was charged was unconstitutional and violated his guaranteed right to free speech. (*Id.*, ¶¶ 43, 44.)

The City then amended the Unnecessary Noise Ordinance to remove reference to the "character" of the prohibited speech. The revised ordinance provides:

> The following acts, among others, are hereby declared to create loud, disturbing and unnecessary noises in violation of this code, but the enumeration shall not be deemed to be exclusive:
>
> . . .
>
> (I) Any person or group of persons willfully making any loud, raucous, or disturbing sounds that – because of volume or duration – annoy, disturb, frighten, injure, or endanger the comfort, health, peace, or safety of reasonable persons of ordinary sensibilities in the neighborhood or Central Business District is prohibited.

Plaintiffs filed the instant motion for a preliminary injunction on June 4, 2019. (Doc. No. 11.) At the time the Complaint was filed, the newly-revised Unnecessary Noise Ordinance had never been enforced against Plaintiffs. In their Motion, Plaintiffs assert that on May 4, 2019, while preaching at the Alive After Five Festival, Jeffrey Shook was given a verbal warning by Lincolnton police under the new Unnecessary Noise Ordinance, and was told it was acceptable for him to speak at a distant location where he could not be heard by festival goers. (Doc. No. 12, at 5.)

## II. LEGAL STANDARD

The standard for considering a motion for a preliminary injunction is well established. A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear

showing that the plaintiff is entitled to such relief" and may never be awarded "as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24, 32 (2008) (noting that even issuance of a permanent injunction after trial "is a matter of equitable discretion; it does not follow from success on the merits as a matter of right."). The Fourth Circuit has similarly recognized that the grant of such a remedy involves "the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc).

In order to receive a preliminary injunction, a plaintiff must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without the preliminary injunction; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. *Winter*, 555 U.S. at 20; *Mountain Valley Pipeline, LLC v. Western Pocahontas Properties Limited Partnership*, 918 F.3d 353 (4th Cir. 2019); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). Each of these four requirements must be satisfied. *Id.*

Accordingly, a plaintiff must make a "clear" showing both that he is likely to suffer irreparable harm absent relief and he is likely to succeed on the merits at trial, as well as demonstrate the balance of equities favors him, and the injunction is in the public interest. *See Winter*, 555 U.S. at 22; *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010). However, plaintiffs "need not show a certainty of success." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013).

### III. DISCUSSION

Plaintiffs ask the Court to enjoin the City from "from enforcing Lincolnton Ordinances § 130.05 and § 93.016 against them, or from in any way hindering, interfering with, or preventing them from exercising their constitutional rights to engage in religious speech on the public streets

of Lincolnton." (*Id.*, at 2.) They argue they are likely to succeed on the merits of their case because they have an unfettered right to speak in traditional public forums, religious speech is constitutionally protected, and because the ordinances are both facially invalid and have been unconstitutionally applied to Plaintiffs.

**A. The City May Regulate Speech in Traditional Public Forums.**

Plaintiffs first take the position that they have an unfettered right to speak during the Alive After Five festival because it takes place in a city street, which is a traditional public forum, the streets, and because their religious speech is constitutionally protected. While Plaintiffs are correct that religious speech is protected as is the right to speak in public streets, these rights are not unfettered.

It is true the Supreme Court has made clear that members of the public "retain strong free speech rights when they venture into public streets and parks, which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Pleasant Grove City, Utah v. Summum,* 555 U.S. 460, 469 (2009) (citations and internal quotation marks omitted). In addition, religious speech is specifically protected under the First Amendment.

However, while the government's power to regulate speech in a traditional public forum is "limited," it is "not foreclosed." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 555 (4th Cir. 2013). Governments may impose content-neutral time, place, and manner regulations of speech in traditional public forums, provided the restrictions are "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." *Id.; see Ross v. Early,* 746 F.3d 546, 552–53 (4th Cir.), *cert. denied*, 135 S. Ct. 183 (2014). A content-neutral regulation is narrowly tailored if it does not "burden substantially

more speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley,* 573 U.S. 464 (2014) (internal quotation marks omitted). To be valid, the regulation "need not be the least restrictive or least intrusive means of serving the government's interests. But the government still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* (internal quotation marks omitted).

It is beyond dispute that the City's interests in ensuring public safety and order are legitimate, significant governmental interests. *McCullen v. Coakley*, 573 U.S. 464 (2014); *see also Reynolds v. Middleton*, 779 F.3d 222, 227 (4th Cir. 2015) ("[W]e generally have not required the government to present evidence to show the existence of a significant governmental interest; common sense and the holdings of prior cases have been found sufficient to establish, for example, that the government has a significant interest in public safety"). Similarly well settled is a city has "a substantial interest in protecting its citizens from unwelcome noise*." Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805–06 (1984). That interest is at its apex when it comes to protecting the "well-being, tranquility, and privacy of the home," *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (citation omitted), but remains significant even when it comes to "protect[ing] such public forums as city streets and parks from excessive noise," *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989).

Importantly, the City may apply these content-neutral regulations to all speech, including religious speech. *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 44 (2nd Cir. 2011) (affirming summary judgment in favor of city that cited street preacher for preaching "at the top of his stentorian voice" on a pedestrian mall under ordinance banning "loud or unreasonable noise"); *Redd v. City of Enterprise*, 140 F.3d 1378, 1382-83 n.4 (11th Cir. 1998) (street

preacher's admission "that he was speaking at least loudly enough to be heard across a busy intersection . . . is sufficient to establish that the officers had arguable probable cause to arrest" him for violating disorderly conduct statute's prohibition against "unreasonable noise" especially where "passers-by complained of the loudness"). For this reason, the Court concludes that Plaintiffs have failed to sufficiently establish they are likely to succeed on the merits of their case based on their argument that they have an unfettered right to preach in public forums.

### B. Plaintiffs' Facial Challenge to the Ordinances

Plaintiffs next argue that the Court should enjoin the City from enforcing the Special Events Ordinance because it is both overbroad and vague, and should similarly enjoin enforcement of the Unnecessary Noise Ordinance because it is also vague.

A law is unconstitutionally overbroad if a party shows that the challenged law "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks,* 539 U.S. 113, 118–19 (2003) (internal citation and quotation marks omitted) (citing *Broadrick,* 413 U.S. at 613, 615). Such a law may not be enforced "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Id.*

A law is unconstitutionally vague and "fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (quoting *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03 (1966)) (internal quotation marks omitted). "Vagueness may invalidate a criminal law for either of two independent reasons[: f]irst, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Id.* at 52

(citing *Kolender v. Lawson,* 461 U.S. 352, 357 (1983)). In order to establish that a law is vague within the due process clause, one "must demonstrate that the law is impermissibly vague in all of its applications" and must "prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 497 and 495, n. 7 (1982) (internal quotation omitted).

1. The Special Events Ordinance is in part facially overbroad, but not void for vagueness.

Next, Plaintiffs argue the Special Events Ordinance is overbroad because "it criminalizes a vast amount of constitutionally protected speech." (Doc. No. 12, at 9.) Specifically, they argue that the ban on speech that is "disruptive" or "abusive" is unconstitutional. In addition, Plaintiffs argue the statute is unconstitutionally vague because it does not define what conduct is "disruptive" or "dangerous" or what language is "abusive" or "threatening." (*Id.*, at 10.)

The Court notes that the Special Event Ordinance is designed at least in part to prohibit a constitutionally unprotected category of speech called "fighting words." In *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942), the Supreme Court stated that the government may regulate the utterance of words that "have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." However, a statute limiting such speech "must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression." *Gooding v. Wilson*, 405 U.S. 518, 522 (1972).

The Court agrees that a ban on "abusive" and "disruptive" speech or conduct, without any reasonable person standard or limiting parameters, is unconstitutionally overbroad. In *Gooding*, the Supreme Court held that "[t]he dictionary definition[ ] of . . . 'abusive' give[s] [it]

greater reach than 'fighting' words." *Id.* In so holding, the Supreme Court cited Webster's Third New International Dictionary (1961) as defining "abusive" to include "harsh insulting language." *Id.* The current Merriam-Webster definition remains the same. Accordingly, in compliance with *Gooding*, the Court finds the Special Event Ordinance is facially unconstitutional for overbreadth.

The current Merriam-Webster definition of "disruptive" references "disruption," which is defined as "a break or interruption in the normal course or continuation of some activity, process, etc." Based on this definition, the Court concludes that the ordinance's prohibition of "disruptive" language or conduct also does not limit its application to fighting words as defined by *Chaplinsky*. For this reason, the Court concludes that the Special Events Ordinance outlawing "disruptive" speech or conduct is facially unconstitutional because it is overbroad. Accordingly, Plaintiffs have demonstrated that they are likely to succeed on their claim that the Special Event Ordinance is unconstitutional to the extent it bans (1) "Any conduct deemed to be disruptive" to participants or attendees of the special event; and (2) "Abusive . . . language that disrupts a special event or festival."

However, this does not end the Court's analysis of the Special Event Ordinance. As stated by the Supreme Court, "[t]he unconstitutionality of a part of an Act does not necessarily defeat . . . the validity of its remaining provisions." *United States v. Jackson,* 390 U.S. 570, 585 (1968). "The only circumstance in which this rule is not to be applied is where 'the invalid provisions are deemed so essential, and are so interwoven with others, that it cannot reasonably be presumed that the legislature intended the statute to operate otherwise than as a whole.'" *Jim Crockett Promotion, Inc. v. City of Charlotte*, 706 F.2d 486, 489 (4th Cir. 1983) (quoting *Moore v. Fowinkle,* 512 F.2d 629, 632 (6th Cir. 1975)).

Here, the Court interprets the Special Event Ordinance to also forbid the following: (1) "Any conduct deemed to be . . . dangerous to participants or attendees of the special event"; (2) and (2) "threatening language that disrupts a special event or festival"; and (3) "[a]busive or threatening language . . . that abuses or threatens another person in a manner likely to cause a fight or brawl at a special event or festival." The Court finds that "[a]busive or threatening language . . . that abuses or threatens another person in a manner likely to cause a fight or brawl at a special event or festival" establishes a limited meaning of "abusive" that is sufficiently narrow so as to confine the prohibition to unprotected "fighting words." Accordingly, this portion of the Special Events Ordinance may stand as it is carefully drawn to punish only unprotected speech and is not susceptible of application to protected expression. *See Johnson v. Quattlebaum,* 664 F. App'x 290, 294 (4th Cir. 2016). The Court also finds no fault with the prohibition on "threatening language that disrupts a special event or festival" as true threats are not constitutionally protected speech, either. *United States v. White,* 670 F.3d 498, 507 (4th Cir. 2012) ("True threats may be proscribed consistent with the Constitution because such threats "are words that 'by their very utterance inflict injury.'") Finally, the Court finds that the prohibition on "[a]ny conduct deemed to be . . . dangerous to participants or attendees of the special events" is a content-neutral restriction on conduct that is narrowly tailored to serve the City's compelling interest in ensuring public safety and order.

Furthermore, Plaintiffs have not demonstrated that the statute, so narrowed by the Court, is impermissibly vague. In *Chaplinsky*, the Supreme Court concluded that the state court's construction of a statute to cover only unprotected fighting words "necessarily dispose[d] of appellant's contention that the statute [was] so vague and indefinite as to render a conviction thereunder a violation of due process." 315 U.S. at 574. Therefore, the Court's narrowing and

interpretation of the Special Events Ordinance disposes of Plaintiffs' argument that the terms "disruptive," "dangerous," "abusive," and "threatening" are vague. *See Johnson v. Quattlebaum,* 664 F. App'x 290, 294 (4th Cir. 2016). The Special Events Ordinance does not "fail[ ] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Rather, it forbids a narrow category of unprotected speech—fighting words—and only when such words are spoken at a special event or festival. Similarly, it is not "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S.Ct. 2551, 2556, (2015). "Police officers cannot arbitrarily decide what conduct to punish under the Statute; both the fighting-words requirement and the proximity limitation circumscribe their discretion." *Quattlebaum*, 664 F. App'x at 295. While some exercise of police discretion is required, the degree required by this ordinance is acceptable. *Id.*

For these reasons, the Court will grant Plaintiff's preliminary injunction such that the City is hereby enjoined from enforcing the portion of the Special Events Ordinance prohibiting "[a]ny conduct deemed to be disruptive . . . to participants or attendees of the special event" and "[a]busive . . . language that disrupts a special event or festival." However, the City may still enforce the portions of the Special Event Ordinance prohibiting "[a]busive or threatening language . . . that abuses or threatens another person in a manner likely to cause a fight or brawl at a special event or festival," "[a]ny conduct deemed to be . . . dangerous to participants or attendees of the special event," and "threatening language that disrupts a special event or festival."

    2.   <u>The Unnecessary Noise Ordinance is not void for vagueness.</u>

Plaintiffs next argue the Unnecessary Noise Ordinance is unconstitutionally vague on two grounds: (1) because it does not define what "sound" is "raucous or disturbing," or what

"duration" is prohibited; and (2) it vests unfettered discretion in City officials to determine what sound is "disturbing" or continues for too long in "duration." (Doc. No. 12, at 11.) For the reasons discussed below, Plaintiffs' arguments fail.

First, noise ordinances banning "disturbing" noise can withstand a challenge for vagueness. For example, in *Grayned,* the Supreme Court has held that an ordinance barring "noise . . . which disturbs or tends to disturb" in the proximity of a school is not unconstitutionally vague or overbroad. *See Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). The Court emphasized that the "antinoise ordinance [under review] does not permit punishment for the expression of an unpopular point of view," thus bringing the ordinance within the category of regulations "aimed at noncommunicative impact." 408 U.S. at 113. The Court accordingly found that, though it was troubled by the vagueness of the words "tends to disturb," in the phrase "noise . . . which disturbs or tends to disturb" as constituting a violation under the ordinance, it could, by looking to other decisions of the State Courts construing similar or analogous words, assume the State Court would give a reasonable and valid construction to the term by limiting its application to "actual or imminent interference with the 'peace or good order' of the school." *Id.* at 111. *See also See Asquith v. City of Beaufort*, 139 F.3d 408, 411 (4th Cir. 1998) (citing *Grayned* to vacate imposition of preliminary injunction against enforcement of noise ordinance making it "unlawful for any person to willfully disturb any neighborhood or business in the City by making or continuing loud and unseemly noises").

Furthermore, in *Kovacs v. Cooper,* 336 U.S. 77, 79 *reh'g denied,* 336 U.S. 921 (1949), the Supreme Court found the terms "loud and raucous" sufficiently specific to withstand a vagueness challenge because "[w]hile these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what

is forbidden." Accordingly, the fact that the Unnecessary Noise Ordinance bans sound that is "raucous" does not cause it to be unconstitutionally vague.

Next, to interpret a state or municipal ordinance, federal courts look to see whether state courts have spoken on the issue. *See Grayned,* 408 U.S. at 109–11 (looking first to state court's interpretation of the state statute); *Terminiello v. City of Chicago,* 337 U.S. 1, 6 (1949) ("We can only take the statute as the state courts read it."). If a state court has not addressed the ordinance at issue, federal courts will look to the "words of the ordinance itself, [ ] the interpretations the [state court] has given to analogous statutes, and, perhaps to some degree, ... the interpretation of the statute given by those charged with enforcing it." *Grayned,* 408 U.S. at 110 (footnotes, citations, and internal quotation marks omitted). Significantly, the court is to apply a narrowing construction to a state statute if the state courts in question have applied a narrowing construction to a similar statute. *See id.* at 111–12; *see also Shuttlesworth v. City of Birmingham,* 382 U.S. 87, 91 (1965) (providing that federal courts must defer to any narrowing construction given to state ordinances by the state court).

The City points out that the North Carolina Court of Appeals has found an ordinance containing nearly identical language constitutional. *See State v. Garren*, 117 N.C. App. 393 (1994) (finding that ordinance banning "any loud, raucous and disturbing noise, which term shall mean any sound which, because of its volume level, duration and character, annoys, disturbs, injures or endangers the comfort, health, peace or safety of reasonable persons of ordinary sensibilities" is constitutional). The *Garren* court wrote:

> Section 1–1(a) does not reach more broadly than is reasonably necessary to protect legitimate state interests and defines "loud, raucous and disturbing" noise as any sound which "annoys, disturbs, injures or endangers the comfort, health, peace or safety of reasonable persons of ordinary sensibilities." Because of this objective standard for measuring what noise is prohibited, Section 1–1(a) is not unconstitutionally overbroad or vague and is therefore valid.

*Id.* at 397.

The Court finds the *Garren* opinion instructive as it indicates how North Carolina courts will define and apply the Unnecessary Noise Ordinance in an objective manner. It does not ban all "loud, raucous, or disturbing sounds." It bans "loud, raucous, or disturbing sounds" that "because of their duration or volume," "annoy, disturb, frighten, injure, or endanger the comfort, health, peace, or safety of *reasonable persons of ordinary sensibilities in the neighborhood or Central Business District*." (emphasis added). As the North Carolina court pointed out, because the relevant standard of behavior is dictated by the objective reasonable person standard, with consideration of the specific location of the sound, the ordinance is not unconstitutionally vague. *See Vill. of Hoffman Estates,* 455 U.S. at n.7 (laws are not void for vagueness where they contain a "an imprecise but comprehensible normative standard"). Furthermore, while some police discretion is required to enforce the statute, the degree required here is acceptable. *See, e.g. Munn v. City of Ocean Springs,* 763 F.3d 437, 440 (5th Cir. 2014) (rejecting vagueness challenge to an ordinance prohibiting "noise that annoys . . . a reasonable person of ordinary sensibilities" because while the ordinance will require a police officer to apply his or her judgment in determining a violation, "the Supreme Court precedents consider this level of uncertainty tolerable in the noise ordinance context"); *Gaughan v. City of Cleveland*, 212 F. App'x 405, 413 (6th Cir. 2007) (unpublished) (rejecting vagueness challenge to noise ordinance because "the imposition of a reasonable person standard to § 683.01(a) creates an objective standard against which the ordinance can be enforced").

For this reason, the Court finds that the Unnecessary Noise Ordinance is not void for vagueness either due to its word choice or based on the possibility for discretion in enforcement. Plaintiffs' example that it could criminalize "a person calling out to another across the street or people conversating in raised voices to be heard over the music" is not persuasive. Such activity

would not violate the ordinance because it would not annoy, disturbed, frighten, injure, or endanger "reasonable persons of ordinary sensibilities in the neighborhood or Central Business District." Not only is there an objective reasonable person standard, the ordinance also contains consideration for the location of the noise. Accordingly, Plaintiffs are unlikely to succeed on the merits of their claim that the Unnecessary Noise Ordinance is void for vagueness under the Due Process clause of the Fourteenth Amendment.

### C. Plaintiffs' As-Applied Challenge

Finally, Plaintiffs argue they are entitled to a preliminary injunction prohibiting the City from enforcing both ordinances in the future because they are likely to succeed on their claim that both ordinances were previously applied to them in an unconstitutional manner. Plaintiffs argue the City applied the Unnecessary Noise Ordinance to them in an unconstitutional manner because "at no time was any objective criteria used to determine if [their] natural voices" were of the type of sound that violates the ordinance. (Doc. No. 12, at 12.) Plaintiffs argue the Special Events Ordinance was unconstitutionally applied to them because no "objective criteria [was] offered to show that their discussion of Bible verses was somehow "disruptive" or "abusive" or "likely to cause a fight or brawl" under § 130.05(B)(3). (*Id.*)

An as-applied challenge is "based on a developed factual record and the application of a statute to a specific person[.]" *Richmond Med. Ctr. for Women v. Herring,* 570 F.3d 165, 172 (4th Cir. 2009) (en banc). Here, the record shows that Plaintiffs were issued a citation for violating the original Unnecessary Noise Ordinance in May 2018, and were not given the opportunity to contest the citation in court. (Doc. No. 13–1, at 3.) The record further establishes that the $20 fine imposed on Plaintiffs for their May 2018 violation was never enforced. (*Id.*) However, the City apparently changed its policy shortly thereafter. The City's Police Chief, Rodney Jordan, submitted a declaration stating that Plaintiff Jeffrey Shook was arrested in June

2018 after officers received citizen complaints about his preaching. (*Id.*) Plaintiff was found not guilty by a district court judge. (*Id.*) The City represents that "[g]oing forward, should Plaintiffs or anyone else charged [sic] with violating that ordinance exercise their rights to contest the charge, the ultimate decision of guilt will be determined in a court of law." (Doc. No. 13, at 15.) Plaintiffs submit no evidence to indicate otherwise.

First, Plaintiff's as-applied challenge to both ordinances appears to be an attempt to repackage their vagueness argument. As explained *supra*, neither ordinance is impermissibly vague. While the Court is troubled by the fact that Plaintiffs were unable to contest the citations issued in May 2018, Plaintiff Jeffrey Shook was subsequently given the opportunity to contest his June 2018 arrest and citation. Based on the conflicting evidence in the record, the Court is not convinced that Plaintiff has demonstrated it is so likely to succeed on its as-applied challenges that it is entitled to an injunction against future enforcement of the ordinances at this stage of the action.

**D. Remaining Factors to be Considered in Awarding a Preliminary Injunction**

The remaining factors to be considered in awarding a preliminary injunction—the alleged irreparable injury to the plaintiff without an injunction, the potential harm to the defendant from the injunction, and the public interest—all weigh in favor of Plaintiffs to the limited extent their request for a preliminary injunction is based on the partial facial overbreadth of the Special Event Ordinance as discussed above.

The Supreme Court has expressed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). Accordingly, the Court finds Plaintiffs have demonstrated irreparable injury.

In addition, as the Fourth Circuit has stated, the City of Lincolnton is "in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002). Finally, the Court finds that the public interest is served by the imposition of an injunction that upholds the constitutional rights of the public. Accordingly, entry of a preliminary injunction barring the City from enforcing the Special Events Ordinance to the extent it bans "abusive" and "disruptive" conduct at special events, as discussed above, is appropriate.

## IV. CONCLUSION

**NOW IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Preliminary Injunction (Doc. No. 11) is **GRANTED IN PART** and **DENIED IN PART.** The City of Lincolnton hereby **ENJOINED** from enforcing the portion of § 130.05 prohibiting "[a]ny conduct deemed to be disruptive . . . to participants or attendees of the special event" and "[a]busive . . . language that disrupts a special event or festival." The remainder of Plaintiffs' motion is **DENIED** as described above.

**SO ORDERED.**

Signed: August 29, 2019

Kenneth D. Bell
United States District Judge